UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MOLLY M.[1], | : | Case No. 3:20-cv-274 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Molly M. brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #15), the Commissioner's Memorandum in Opposition (Doc. #18), Plaintiff's Reply (Doc. #19), and the administrative record (Doc. #11).

**I.     Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

In the present case, Plaintiff applied for benefits on April 20, 2017, alleging disability due to several impairments, including Bipolar I Disorder, Anxiety Disorder, and Type I Diabetes. After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Laura Twilley-Roberts.  Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since June 15, 2016.

Step 2: She has the severe impairments of Schizoaffective Disorder, Bipolar Disorder, and Generalized Anxiety Disorder.[2]

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at all exertional levels with the following nonexertional limitations: [Plaintiff] can have occasional interaction with coworkers and supervisors but no interaction with the general public. [Plaintiff] cannot perform tandem or teamwork and the job should not involve over-the-shoulder supervision. [Plaintiff] can adapt to work in a routine work setting with occasional change in work processes. [Plaintiff] can understand, remember, and carry out simple tasks with simple instructions in a routine work setting. [Plaintiff] will be off-task up to 10 percent of the workday."

She is unable to perform any of her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

---

[2] Plaintiff's argument focused Dr. Anklesaria's opinion on her mental health impairments and has waived any other challenges to other opinions or impairments, including her diabetes, as she failed to adequately raise them. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (finding plaintiff had waived its challenge to the ALJ's findings on certain impairments by not raising it in the merits brief).

(Doc. #11-2, *PageID* #s 57-70). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 70-71.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #11-2, *PageID* #s 57-70), Plaintiff's Statement of Errors (Doc. #15), the Commissioner's Memorandum in Opposition (Doc. #18), and Plaintiff's Reply (Doc. #19). To the extent that additional facts are relevant, they will be summarized in the analysis below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

In this case, Plaintiff raises one assignment of error, which is that the "ALJ reversibly erred in evaluating the treating source opinion of Dr. Anklesaria and the medical evidence." (Doc. #15, *PageID* #1370). In response, the Commissioner maintains that the ALJ evaluated Dr. Anklesaria's opinion consistent with the regulations and that her decision is supported by substantial evidence. (Doc. #18, *PageID* #s 1389-95).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 404.1527. Because Plaintiff's claim for disability was filed in April 2017, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Previously, the Social Security Administration followed the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

However, the new regulations changed this standard for applications filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." § 404.1520c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c). Further, because the regulations consider supportability and consistency the "most important factors," ALJs

4

are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 404.1520c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." § 404.1520c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." § 404.1520c(c)(2).

Thus, while these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)).

In this case, Plaintiff alleges that the ALJ erred in her assessment of Plaintiff's treating psychiatrist, Ariz Anklesaria, M.D.. (Doc. #15, *PageID* #s 1374-78). In addition to the medical records submitted from his treatment of Plaintiff, Dr. Anklesaria also examined Plaintiff and completed a "Mental Impairment Questionnaire" in February 2019. (Doc. #11-9, *PageID* #s 1160-74). On the questionnaire, Dr. Anklesaria indicated that he had been treating Plaintiff for "Bipolar

Type I Severe" and "Unspecified Anxiety" with "panic attacks" since May 2014. *Id*. at 1171. In response to a list of potential signs and symptoms, Dr. Anklesaria indicated that Plaintiff exhibited symptoms, including sleep disturbance; mood disturbances; social withdrawal or isolation; blunt, flat or inappropriate affect; decreased energy; manic syndrome; recurrent panic attacks; generalized persistent anxiety; difficulty thinking or concentrating; and suicidal ideation or attempts. *Id*. As to any other symptoms not identified in the checklist, Dr. Anklesaria stated that Plaintiff had "supernatural beliefs, grandiosity." *Id*. He affirmed that Plaintiff's psychiatric condition exacerbates her experience of pain or other physical symptoms, namely her headaches and back pain. *Id*. According to Dr. Anklesaria, Plaintiff's condition would cause her to be off-task 20 percent or more of the time and be absent more than three times a month. *Id*.

Dr. Anklesaria also completed a checklist form regarding Plaintiff's ability to perform work-related activities in light of her mental health impairments. *See id*. at 1172. As for activities that fell under the category of being able to "understand, remember, or apply," Dr. Anklesaria indicated that Plaintiff was moderately, markedly, or extremely limited in these types of activities. *Id*. As for activities that fell under the category of being able to "concentrate, persist, or maintain pace," Dr. Anklesaria found that Plaintiff was primarily markedly or extremely limited in these types of activities. *Id*. In being able to "adapt or manage oneself," Dr. Anklesaria indicated that Plaintiff had either no or mild limitations in her ability to maintain personal hygiene and attire for the work setting, but otherwise had moderate, marked, or extreme limitations in her ability to perform activities in this category. *Id*. at 1172-73.

Overall, Dr. Anklesaria categorized both Plaintiff's ability to "learn, recall, or use information to perform work activities" as well as her ability to "regulate[] [her] emotions, control [her] behavior, and maintain well-being in a work setting" as being markedly limited. *Id*. at 1173.

6

He found her overall ability to "relate to and work with supervisors, co-workers, and the public" as well as her ability to "focus attention on work activities and to stay on task at a sustained rate" to be extremely limited. *Id*. When asked whether Plaintiff would be able to perform regular, full-time competitive work on a sustained basis without being absent more than two times per month, being off-task more than 15 percent of the day, or needing additional breaks because of her impairments, Dr. Anklesaria checked the "No" box. *Id*. In support of his opinions, Dr. Anklesaria wrote that Plaintiff has "significant trouble with focus [and] sustained concentration. [She is] easily flustered, [has] high social anxiety [and] difficulty interacting [with] others/public. [She has a] propensity to deteriorate very quickly under typical job stress." *Id*.

In reviewing Dr. Anklesaria's opinion on the Medical Impairment Questionnaire, the ALJ ultimately found it "unpersuasive." (Doc. #11-2, *PageID* #66). While the ALJ acknowledged that the Dr. Anklesaria's opinion "would result in a finding of disability[,]" she nonetheless concluded that the degree of limitations he found was "unsupported by his objective examination findings and inconsistent with other evidence of record." *Id*. Here, she noted out that Dr. Anklesaria's opinion appeared to be based upon the "subjective complaints made by [Plaintiff] and her mother" and, yet, at the two examinations where Plaintiff's mother attended to discuss disability, the examination findings were "unremarkable." *Id*. at 67. Specifically, the ALJ pointed out that, at both examinations, Dr. Anklesaria documented Plaintiff as exhibiting "normal behavior, speech, associations, thoughts and orientation" along with a "euthymic mood, full range of affect and no cognitive deficits." *Id*. (citing Doc. #11-9, *PageID* #s 1099-1100, 1167). Also, in contrast to the responses on the questionnaire, Dr. Anklesaria "assessed bipolar disorder and anxiety as stable and improving" at these two examinations. *Id*. (citing Doc. #11-9, *PageID* #s 1099-1100, 1167). The ALJ also noted that while Plaintiff and her mother told Dr. Anklesaria that she was only able to

7

keep jobs for "three or four months" because of her mental impairments, the earnings records showed that she had wages from Regis Corporation from 2005 through 2009 and from Office Depot from 2011 through 2014. *Id*. (citing Doc. #11-5).

The ALJ also found that there was other evidence in the record that was inconsistent with the degree of limitation opined by Dr. Anklesaria in the questionnaire. *Id*. For instance, the mental status examinations that Plaintiff had with her primary care provider, Leon Aguilar, APRN, were "routinely within normal limits." *Id*. (citing Doc. #11-7, *PageID* #s 576, 580; Doc. #11-8, *PageID* #s 786, 798-99; Doc. #11-8, *PageID* #963). Here, the ALJ also pointed to a June 2018 examination where Plaintiff "appeared with a normal mood and affect, no diffuse anxiety or paranoid ideations, active[,] alert … fully oriented with good insight and judgment and intact memory." *Id*. (citing Doc. #11-8, *PageID* #963). Plaintiff also denied any suicidal or homicidal ideation at this examination. *Id*.

The ALJ's explanation for finding Dr. Anklesaria's opinion unpersuasive is clearly articulated and supported by substantial evidence. First, the ALJ specifically discussed the two most important factors listed in 20 C.F.R. § 404.1520c—supportability and consistency. She pointed out that discrepancies between Dr. Anklesaria's findings at his underlying examinations of Plaintiff and the opined limitations on the questionnaire. She also noted how his opinion was inconsistent with the record as a whole, including Plaintiff's wage records and the mental status examinations made with her primary care provider. Additionally, the ALJ had previously evaluated the different categories of mental functioning and found that Plaintiff only had moderate limitations while Dr. Anklesaria found marked or extreme limitations in most of these categories. (*Compare* Doc. #11-2, *PageID* #s 59-60 *with* Doc. #11-9, *PageID* #s 1171-74). Indeed, in the context of discussing why Plaintiff did not satisfy any of the Listing criteria, the ALJ provided an

in-depth explanation as to why she concluded that Plaintiff only had moderate limitations in the realms of mental functioning. (Doc. #11-2, *PageID* #s 59-60). This also supports the ALJ's conclusion that Dr. Anklesaria's opinion was inconsistent with the record. *See Sprague v. Colvin*, 2015 WL 2066227, at *3 (S.D. Ohio) (Graham, D.J.) ("Where, as here, the ALJ thoroughly addressed such matters as the consultants' reports, the other medical evidence of record, and plaintiff's credibility earlier in his decision, the ALJ was not required to repeat his discussion of those matters again in his discussion of the weight to be assigned to the medical opinions.").

Further, while Plaintiff challenges the ALJ's decision to discount Dr. Anklesaria's opinion because the ALJ found it based on the subjective complaints of Plaintiff and her mother, this was, as noted above, not the sole reason that the ALJ found the opinion unpersuasive. Additionally, contrary to Plaintiff's contentions, the ALJ did not simply ignore these subjective complaints; rather, she found that the reported complaints were not supported by the objective findings documented by Dr. Anklesaria at these evaluations. Furthermore, it is not in this Court's province to reweigh the evidence or decide questions of credibility. *See Reynolds*, 424 F. App'x at 414 (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). In short, the ALJ clearly satisfied the articulation requirements and was not required to discuss any other factor. *See* 20 C.F.R. § 404.1520c(b)(2) (requiring only that the ALJ articulate how she considered the supportability and consistency factors).

Second, while Plaintiff points to other evidence to argue that more weight should have been provided to Dr. Anklesaria's opinion or that the ALJ should have found that Plaintiff had a more restrictive RFC, there is substantial evidence to support the ALJ's decision regarding her mental

9

limitations. For example, the ALJ considered other opinion evidence in rendering her decision, including the opinions of the state agency consultants, Jennifer Swain, Psy.D. and Courtney Zeune, Psy.D. (Doc. #11-2, *PageID* #67).

Both Drs. Swain and Zeune reviewed Plaintiff's medical records and found her moderately limited in her ability to complete sustained work without interruptions from her mental health symptoms, detailing that she be able to perform multistep tasks but only "without demands for fast pace or high production quotas." (Doc. #11-3, *PageID* #143; Doc. #11-2, *PageID* #159). They also opined that she could have occasional interaction with coworkers and supervisors, but no interaction with the public. *Id*. at 144, 159. Finally, they also found that she could "adapt to a setting in which duties are routine and predictable." *Id*. at 144, 160.

In reviewing these opinions, the ALJ concluded that they were supported by the objective medical evidence, which revealed "a history of conservative outpatient treatment during the adjudicative period with acute symptoms of depression treated with medicine adjustments which [Plaintiff] reports improvement." (Doc. #11-2, *PageID* #67) (citing Doc. #11-9, *PageID* #1116; Doc. #11-7, *PageID* #s 731-33, 755). Additionally, the ALJ also found these opinions to be supported by the objective findings of Stephen Halmi, Psy.D., who had examined Plaintiff and reviewed her medical records. *Id*. In particular, the ALJ noted that the opinions of Drs. Swain and Zeune were consistent with Dr. Halmi's findings that Plaintiff was able to appropriately converse and respond to direct questions, follow conversationally without redirection, remain focused on task with demonstrated adequate persistence, and that she was cooperative with no overt signs of anxiety, depression, or significant emotional distress during the evaluation. *Id*. at 67-68 (citing Doc. #11-7, *PageID* #s 777-78). Based on all these reasons, the ALJ found the opinions of Drs.

Swain and Zeune to be "persuasive" and incorporated their opined functional limitations into Plaintiff's RFC. *Id*. at 60, 67.

Accordingly, the ALJ properly relied on the opinions of the state agency medical consultants in assessing Plaintiff's RFC, and their opinions constitute substantial evidence to support the ALJ's decision. Since there is substantial evidence to support the ALJ's decision, this Court will not disturb the Commissioner's findings.

For all the foregoing reasons, the Court finds that the ALJ properly considered and explained the reasons for finding Dr. Anklesaria's opinion unpersuasive. Moreover, the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's assignment of error is without merit.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. #15) is **OVERRULED**, the Commissioner's non-disability determination be **AFFIRMED**; and

2. The case be terminated on the docket of this Court.


February 4, 2022

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge